UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VIVIAN BURNS,

    Plaintiff,

    v.

INTERNATIONAL BUSINESS MACHINES CORPORATION,

    Defendant.

Case No. C20-1555RSM

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

This matter comes before the Court on Defendant International Business Machines Corporation ("IBM")'s Motion for Summary Judgment, Dkt. #36. IBM moves to dismiss all of Plaintiff Vivian Burns's claims as a matter of law. The Court has determined that it can rule without oral argument. For the reasons stated below, the Court GRANTS this Motion and dismisses Plaintiff's claims.[1]

## II.    BACKGROUND

Plaintiff Burns brings claims against her former employer under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 to 634 ("ADEA"), and the Americans with Disabilities Act, 42 U.S.C. §§ 12112 to 12117 ("ADA").

---

[1] The Court notes Ms. Burns has moved to file a second amended complaint. *See* Dkt. #21. The proposed amended complaint does not contain new claims or alter the factual record. *See* Dkt. #21-1. Accordingly, the Court finds it can rule on the instant Motion now.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

From 2015 to 2019, Ms. Burns worked as a Technical Support Professional in IBM's Cloud Support group. Dkt. #37-1, Ex. 1 ("Plaintiff's Tr."), 73:19-25. IBM issued her a company-owned laptop and cell phone. *Id.* at 295:4-9. Plaintiff admits she needed these devices to do her job. *Id.* at 289:3-10; 178:6-9; 331:10-11; 325:18-23.

Ms. Burns was one of only two people in IBM's Cloud Support group working in a data center in Tukwila, Washington. *Id.* at 73:6-25, Dkt. #38 ("Burrow Decl."), at ¶ 3. For part of 2018 and 2019, her manager was Bobby Burrow, working out of Houston, Texas. Plaintiff Tr. at 131:19-21; Burrow Decl., at ¶ 3. Ms. Burns and Mr. Burrow never worked together in the same physical location, never met each other in person, and never met each other via video. *Id.* at 44:19-24, 148: 13-21, Burrow Decl., at ¶ 2.

Although Ms. Burns alleges disability discrimination in this case, she states that Mr. Burrow never talked to her in a way that suggested he thought she had a disability. Plaintiff's Tr. at 80:15-21 ("No. He never let me know that he thought I had a disability. And he – his communication always seemed to be professional."). Mr. Burrow supervised Ms. Burns from December 19, 2018, to September, 2019. Burrow Decl., at ¶ 2. Other than Ms. Burns telling Mr. Burrow she had worked at IBM for 20 years, she does not remember any conversations with him about her age. Plaintiff's Tr. at 83:17-84:1, Burrow Decl., at ¶ 6. Mr. Burrow knew that Ms. Burns was "unhoused," *i.e.* homeless. Plaintiff's Tr. 83:17-84:1. But Ms. Burns has stated that her status of being "unhoused" did not give Mr. Burrow any indication of her age or disability status. Plaintiff's Tr. at 84:2-8; Burrow Decl., at ¶ 5.

In 2017, the Internal Revenue Service ("IRS") began garnishing Ms. Burns' wages for unpaid taxes. Plaintiff's Tr. at 19:14-22, 21:19-21. The IRS's garnishments led to her financial difficulties and to her unhoused situation. *Id.* at 28:22:29:1.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

In 2019, Burns was living in her 1984 Ford Econoline E350 van. Plaintiff's Tr. 210:15-17. On the morning of June 24, 2019, her van broke down, and she was forced to leave it on the side of the road in Kent, Washington. *Id*. 209:24-210:5. Ms. Burns left all her personal property—including her IBM laptop and cell phone—in her van, and walked about a mile away to find help. *Id*. 210:18-211:3. She testified she was not concerned about leaving IBM's laptop computer and cell phone in her unattended van. *Id*. 214:14-21. When she returned, the van was gone. *Id*. 215:10-216:12. Ms. Burns learned that her van had been towed by Fitz Towing to an impound lot in Auburn. *Id*. 218:9-13.

She states in deposition that she tried to get her van back but was asked to pay $192, money she did not have. *Id.* at 218:16–219:11. She attempted to resolve the situation by talking with the Auburn Chief of Police and the towing company, but was ultimately unsuccessful. Although she was offered an opportunity to collect her personal property out of the van, including her IBM laptop and phone, she declined. *Id.* at 221:4–222:17. She believed this could affect her right to later get her van back.

Ms. Burns testified she had given Fitz Towing "full disclosure" that if she could not move the van, then she was going to live in it "right there" at the impound lot. *Id*. at 250:4-17. Fitz Towing therefore called the Auburn Police to report her for trespassing. *Id*. at 248:1-16.

An Auburn police officer responded to the report of trespassing, talked with Ms. Burns, and explained she could pay the towing and storage fees to Fitz Towing and leave with her van, remove her personal property—including IBM's laptop computer and cell phone, leave Fitz Towing's impound lot without her van or personal property, or be arrested for trespassing. *Id.* at 252:1-254:19; Dkt. #37-1, Ex. 2 ("Police Report"). Ms. Burns refused to leave and was arrested. Plaintiff's Tr. at 255:1-3, 256:10-14.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

On June 29, 2019, after being released from jail, Ms. Burns returned to work at IBM. She attempted to pursue her legal options to dismiss the charge of trespassing and to get her van back.

By July 11, 2019, Ms. Burns still had not retrieved IBM's laptop computer and cell phone. Burrow Decl., Ex. 8. At this point, she had received at least three notifications that she was accessing IBM's network from "a workstation/laptop that is not registered with IBM or not managed to IBM standards." Burrow Decl., Ex. 8. The notifications warned her that she was "in danger of having all access to IBM removed [because] of lack of compliance with IBM policy." Burrow Decl., Ex. 8.

Mr. Burrow emailed Ms. Burns, asking, "[w]hat's the status on you getting your laptop back? This has to get resolved asap." Burrow Decl., Ex. 8. She responded, "I've contacted the law firm to get permission to get access to the van to get the laptop. They have not called me back. I have called them every day, except for yesterday. I'll keep calling until I get a response." Burrow Decl., Ex. 8. Mr. Burrow then replied:

> First, I want to say that it's not my intent to sound callus [sic] or to sound as though I'm not sympathetic to your situation, but ultimately the laptop and the company phone are your responsibility, as I'm sure you're aware. If you're not able to obtain it/them and your IBM account gets disabled, I'm not sure how you're going to be able to work reliably. I need to know what your real, long-term plan is to remedy this, asap.

*Id.* Ms. Burns ended the email conversation by stating, "[t]he urgency of the matter has been conveyed to me in the proper tone." *Id*. Ms. Burns later admitted that retrieving IBM's laptop computer and cell phone was a very serious matter for IBM and for her as well—she could not do her job without these items. Plaintiff's Tr. 325:18-25.

On July 16, 2019, Ms. Burns wrote to Mr. Burrow, "I may arrive late and work late tomorrow as I work toward getting the items we discussed. I need an order and I have to go to a

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

place in order to get one." Burrow Decl., Ex. 9.  On July 18, 2019, Ms. Burns was late to work. *Id*. On July 30, 2019, she was late to work.  Burrow Decl., Ex. 11.  On August 2, 2019, Mr. Burrow wrote, "Hello Vivian, are you taking a sick day today?" Burrow Decl., Ex. 12.  He warned, "I have some concerns about the amount of time off you've taken so far for the year. It looks like you're maxxing [sic] out your vacation days and you're getting close on your sick days as well." *Id*.  On August 3, 2019, Ms. Burns responded, "I have taken more time lately while I deal with my homeless situation." Burrow Decl., Ex. 13. She also responded, "I have been at the courthouse trying to file documents and typing up documents to file on their computer." *Id*. Ms. Burns explained, "I can only do so much, and I have reached the max of my potential in this homeless situation." Burrow Decl., Ex. 14.  She continued, "One battle at a time. The purported IRS garnishment should have been stopped but it's still on," and "it's just a huge mess, and I can only focus on so much before I mess up my job." *Id*.

On August 20, 2019, Mr. Burrow wrote, "Hey Vivian, when you can, can you fil [sic] me in on the latest on your situation? Where are we at with being able to get your laptop back and what are *all* of the options on the table to make that happen?"  Burrow Decl., Ex. 16.  On August 20, 2019, Ms. Burns said, "I have a case in Superior Court King County Washington, Friday August 23, 2019 at 11am, were [sic] a Temporary Restraining Order and an Order to Show Cause will be heard by Judge [sic] by Judge Steiner." Burrow Decl., Ex. 16.  Ms. Burns also admitted, "At this time, I have not had any direct communication with the company due to trespass, except to say there was a hearing for the temporary restraining order, and when they didn't show up for that, I called them to tell them the restraining order was issued …." Burrow Decl., Ex. 15.  On August 22, 2019, Mr. Burrow called Ms. Burns.  Burrow Decl., at ¶7, Ex. 17. He said that, if she did not retrieve IBM's laptop computer and cell phone by September 2, 2019,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5

IBM would place her on an unpaid leave of absence until further notice. Burrow Decl., Burrow Decl., at ¶7, Ex. 17. Not surprisingly, Ms. Burns admitted that, during the summer of 2019, she remembered "getting a bunch" of security violation emails from IBM (for accessing IBM's network from a workstation/laptop that was not registered with IBM or managed to IBM standards). Plaintiff's Tr. at 88:17-23; 288:19-24. "And it was very stressful for me to keep getting the violations." *Id.* at 134:12-13. She admitted, "It was very serious." *Id.* at 289:3-6. "I needed – I needed the laptop and cell phone to do my job. And I wasn't getting it replaced." *Id.* at 289:7- 10. She admitted that not having IBM's laptop computer and cell phone "interfered greatly" with her ability to do her whole job. *Id.* at 178:6-9. She admitted "It was a job requirement," *id.* at 331:10-11, and "I couldn't do my job without it," *id.* at 325:18-23.

On September 3, 2019, Ms. Burns appeared before the King County District Court for a hearing related to the charges of second-degree criminal trespass. *See* City of Auburn v. Burns, King County District Court Cause No. 9Z0580693 (2019). The hearing did not go well. Ms. Burns denied that her court-appointed counsel represented her, repeatedly denied that the Court had jurisdiction over her, and was eventually remanded into custody. *See* Dkt. #37-1, Ex. 4. Later that day, Ms. Burns called Mr. Burrow to inform him that she had been taken into custody and ordered to undergo an in-custody evaluation. Plaintiff's Tr. 133:1-4; Burrow Decl., Ex. 16. Ms. Burns was going to be in custody through at least September 18, 2019. Plaintiff's Tr. 13:2-4; Burrow Decl., Ex. 19.

Mr. Burrow then contacted his Human Resources partner, Pinki Modi Robinson, at IBM and informed her of the following:

> At this point, I think I'd like to pursue options to terminate her employment. There seems to be too much with her past that I'm not aware of, and too much going on now that is making her unreliable.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

> This, coupled with the loss of the equipment, sounds like we have ample grounds to pursue this as an option.

Burrow Decl., at ¶4, Ex. 19.  Thereafter, IBM terminated Burns' at-will employment (via a phone call and voice mail) on September 6, 2019.  Burrow Decl., at ¶8.

### III.   LEGAL ANALYSIS

**A. Legal Standard for Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Material facts are those which might affect the outcome of the suit under governing law.  *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial."  *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party.  *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. ADA and ADEA Claims**

In both the ADA and ADEA claims proceed under the three-stage, burden-shifting framework as articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817,

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

36 L. Ed. 2d 668 (1973). *See also Curley v. City of N. Las Vegas*, 772 F.3d 629, 632 (2014); *Shelley v. Geren*, 666 F.3d 599 (9th Cir. 2012). If a plaintiff establishes a prima facie case, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies its burden, then the plaintiff must show that there is a genuine issue of material fact as to whether the reason advanced by IBM is a pretext for disability discrimination. *Curley*, 772 F.3d at 632.

For an ADA claim, the plaintiff must show that: (1) she was disabled within the meaning of the ADA; (2) she was able to perform the essential functions of the job with or without reasonable accommodation; and (3) she suffered an adverse employment decision because of her disability. *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999). For an ADEA claim, the plaintiff must show that: (1) she was at least 40 years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was otherwise qualified for the position (i.e., performing her job in a satisfactory manner); and (4) she was replaced by a substantially younger employee with equal or inferior qualifications. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000).

The Court has reviewed the evidence submitted by the parties and agrees with IBM that Ms. Burns has presented no evidence she had a mental or physical impairment at the time IBM terminated her employment. Her deposition testimony indicates she does not believe she had a mental or physical disability at the time. *See* Dkt. #36 at 16-17 (citing deposition excerpts). Importantly, she also testified she did not inform IBM of any disability prior to termination and that she "didn't display any mental problems" in the office. *See* Plaintiff's Tr. 44:2-15. Mr. Burrow, the apparent decision maker, did not ever see Ms. Burns or interact with her in person. This is fatal not only to her ADA discrimination claim but also her failure to accommodate claim.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

      Although Ms. Burns correctly points out that Mr. Burrow and IBM knew she was held for a mental evaluation on September 3, 2019, she does not demonstrate that IBM was informed of the results of that evaluation. She provides no evidence that this was a factor in the decision to terminate. Although the timing of the decision to terminate corresponded closely with being informed of the mental evaluation, it came after a long period of documented frustration related to Ms. Burns being unable to do her job or retrieve the company laptop and cell phone. Further, IBM was not just being informed of a mental evaluation, but that their employee was facing criminal consequences—whether rightly or wrongly—for fighting to maintain possession of her van while ignoring her obligations as an employee.

      Meanwhile, she testified that "[t]he only reason I believe my termination was caused by my age is because – I've worked at IBM quite a while…. And it appears that after I told [Burrow] I was close to my 20 years, that that led to some action to make me not have my job." Plaintiff's Tr. at 101:15-102:5. Later in her deposition she was unable to draw any connection between her age and her termination. *See id*. at 103:4-15.

      Even if Ms. Burns had presented a prima facie case, the Court agrees with IBM that it has presented adequate evidence of a legitimate, non-discriminatory reason or reasons for termination—willful failure to retrieve the IBM laptop and cell phone, which she needed to do her job—and that Ms. Burns has failed to demonstrate this reason was pretextual or that a discriminatory reason more likely motivated IBM's decision to terminate. Accordingly, these claims are properly dismissed as a matter of law.

## IV.   CONCLUSION

      Having considered the briefing from the parties and the remainder of the record, the Court hereby finds and ORDERS that Defendant IBM's Motion for Summary Judgment, Dkt. #36, is

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

GRANTED. All of Plaintiff's claims are DISMISSED. She cannot raise new claims in response to a summary judgment motion. All other pending Motions are DENIED as MOOT. This case is CLOSED.

DATED this 29th day of November, 2021.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE